**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In Re: | ) IN CHAPTER 11 PROCEEDINGS |
| | ) |
| CARRIE L. SHOPPELL, INC., | ) BK 05-33609 |
| | ) |
| Debtor. | ) |

**SECOND AMENDED PLAN OF REORGANIZATION**

Comes now Debtor, Carrie L. Shoppell, Inc., and proposes the following Second Amended Plan of Reorganization:

## ARTICLE I

### Definitions

For the purposes of this Plan of Reorganization, the following terms shall have the following meanings unless the context clearly requires otherwise:

    1.1    Carrie L. Shoppell, Inc.:    Debtor in these proceedings.

    1.2    Alan Shoppell:    Director of operations of the Debtor

    1.3    Carrie L. Shoppell:    President and 100% shareholder of Debtor

    1.4    Administrative Expense:    Any claim entitled to priority under Section 507(a)(1) of the Bankruptcy Code incurred by the Debtor post-petition in the ordinary course of the Debtor's business, including but not limited to claims for compensation of professionals made pursuant to Section 330 of the Code.

    1.5    Bar Date:    Date fixed by order of this Court setting _____ as the last date for creditors with disputed or unliquidated claims to file claims.

    1.6    Code:  The United States Bankruptcy Code, Title 11 of the United States code as enacted in 1978 and thereafter amended.

    1.7    Confirmation: Entry by the court of an order confirming the Plan at or after a hearing pursuant to Section 1129 of the code.

1.8   Cost Claim:   Any claim entitled to administrative expense priority other than claim s incurred by Debtor in the normal course of business and claims for compensation of professionals made pursuant to Section 330 of the Code.

1.9   Court:  The United States Bankruptcy Court for the Southern District of Illinois, East St. Louis Division.

1.10   Creditor:   Any person having a claim against Debtor.

1.11   Debtor:   Carrie L. Shoppell, Inc.

1.12   Final Confirmation:   The date upon which the order entered by the Court confirming the Plan becomes final and unappealable.

1.13   Plan:   This Second Amended Plan of reorganization, including any modifications or corrections.

1.14   Secured Claim:   Any claim, other than a Tax claim, secured by property of the Debtor.

1.15   Tax Claim:   Any claim entitled to priority treatment pursuant to Section 507(a)(7) of the Code.

1.16   Unsecured Claim:   Any claim, whether or not disputed, liquidated or contingent, other than an Administrative Expense, a Tax Claim, a Cost Claim or a Secured Claim.

## ARTICLE II

### Certain General Terms and Conditions

The following general terms and conditions apply to this Plan:

2.1   Claims:   Various types of claims are defined in the Plan.  This Plan is intended to deal with all claims, except Cost Claims, against Debtor of whatever character, whether or not disputed, contingent or liquidated.

2.2   Effective Date:   The effective date of this Plan, as that terms is used in the Code, is the date of confirmation.

2.3   Modifications to Plan: This Plan may be modified upon application of Debtor or corrected prior to confirmation.

## ARTICLE III

### Background to and concept of the Plan

Carrie L. Shoppell, Inc. was incorporated April 1, 1996 to operate a KFC franchise located at 48 West Edwardsville Road, Wood River, Illinois.  After operating at that location for several years KFC required the corporation to relocate and build an updated store.  Ground was purchased and a new facility built at 1800 Vaughn Road, Wood River, Illinois, which opened in February 2002.  The new restaurant was in an area that was planned for commercial development but was one of the first businesses in the area.  The business struggled with the increased cost for the new building and the lack of other business in the area, resulting in sales not increasing sufficiently to cover the increased costs.  From 2002 to 2005 the business struggled with management problems and health issues for Alan Shoppell who ran the day-to-day operations.  In 2005 the loan with Missouri State Bank for the building and equipment came due and the bank declared the loan in default and chose not to renew the loan.  The company attempted to refinance the loan through Eagle Bank but the loan was turned down due to an appraisal that did not take into consideration the more than doubling of land values in the immediate area since the real estate was purchased.

In order to reorganize Debtor has been able to get better control of its costs and inventory.  During 2005 the company had an increase of approximately 3% in sales.  The planned commercial development is starting to open with a Super Wal-Mart due to open in May 2006 and several other businesses due to open in 2006.  Debtor anticipates sale increases of at least 5% over the next two years which should allow it to pay its creditors according to the plan being submitted.

The plan provides for continuation of payments to Missouri State Bank on its two secured loans while Debtor is applying for financing to pay off the Missouri State Bank loans and other liens that would need to be paid in order to provide a 1st mortgage to the new lender, which would include payments made by the guarantors of the Missouri State Bank loans.  In the event Debtor is unable to refinance the Missouri State Bank loans within 4 months of the Effective Date Debtor shall have 30 days to sell the business by private or public sale pursuant to 11 USC

363 (f). The plan further provides for the curing of arrearages on payments to KFC payment of pre-petition taxes and 100% payment to unsecured creditors over 5 years.

## ARTICLE IV

### Division of Creditors into Classes

| | | |
|---|---|---|
| 4.1 | Class 1: | Cost Claims: |
| | | U. S. Trustee fees |
| | | Clerk of Bankruptcy Court fees |
| 4.2 | Class 2: | Administrative Expenses: |
| | | Attorney, accountant and other professional fees and expenses |
| 4.3 | Class 3: | Administrative Claims: |
| | | Post-petition payments by guarantors of Missouri State Bank loan |
| 4.4 | Class 4: | Priority Tax Claims: |
| | | Internal Revenue Service; Illinois Department of Revenue; Illinois Department of Employment Security |
| 4.5 | Class 5: | Secured Claim: |
| | | Missouri State Bank-Secured by real estate |
| 4.6 | Class 6: | Secured Claim: |
| | | Missouri State Bank-Secured by equipment, fixtures, inventory and accounts |
| 4.7 | Class 7: | Secured Claim: |
| | | Madison County Treasurer-Real estate taxes for Debtor's location |
| 4.8 | Class 8: | Executory Contract – Lease of Building: |
| | | Carrie L. Shoppell |
| 4.9 | Class 9: | Secured Claim-Internal Revenue Service |

| | | |
|---|---|---|
| 4.10 | Class 10: | Executory Contract-Surety Equipment |
| | | Lease of ice machine |
| 4.11 | Class 11: | Executory Claims: |
| | | Franchise agreement with KFC Corp. |
| 4.12 | Class 12: | Unsecured Claims: |
| | | Allowed unsecured claims |
| 4.13 | Class 13: | Disputed Claims: |
| | | Premises liability claim of Cindy and John Grant |

## **ARTICLE V**

### **Treatment of Classes**

5.1     Class 1 claims will be paid in accordance with 11 U.S.C. §1930(a)(6).

5.2     Class 2 administrative claims shall be paid in full by Debtor at the time that Debtor refinances his Missouri State Bank loans. The class 2 claims shall be paid from the proceeds of the refinancing of the loan subsequent to classes 3, 5, 6, 7, and 9 claims. In the event the refinance does not provide sufficient funds to pay class 2 claims in full, the balance of the class 2 claims shall be paid in monthly payments of $250.00 until paid in full. Impaired.

5.3     Class 3 claim of the guarantors of the Missouri State Bank loans will be paid within 4 months of the Effective Date from the proceeds of the refinance of the Missouri State Bank loans or within 5 months of the Effective Date from the proceeds of the 363 sale of the business. Any refinance of the Missouri State Bank loan will include sufficient proceeds to pay the class 3 claims in full. Impaired.

5.4     Class 4 priority tax claims shall be paid in full within 6 years of date of assessment with interest from date of the Effective Date at the federal post-judgment rate in effect on date of filing of the bankruptcy. Payments shall apply first to the principal of the oldest taxes until all principal is paid and then to accrued interest. Impaired.

5.5     Class 5 claim of Missouri State Bank is a real estate mortgage secured by the real estate and building at 1800 Vaughn Road, Wood River, Illinois. Debtor will pay $2,307.70 to

Missouri State Bank by certified funds on the first Tuesday following the Effective Date and on each Tuesday thereafter, which payments will be applied to principal and interest on the Class 5 and Class 6 claims, with interest being calculated at the contract rates. Within four months of the Effective Date Debtor will pay Missouri State Bank the balance of said claim including principal, interest and costs of collection including attorney fees. In the event Debtor is unable to obtain financing to pay off said claim and the Class 3, 6, 7 and 9 claims in full within four months of the Effective Date, Debtor shall sell the business, including all assets of the Debtor and the real estate on which Debtor operates its KFC franchise, through a 363 sale within 30 days after the expiration of said four months. Impaired.

      5.6     Class 6 claim of Missouri State Bank is secured by the equipment, fixtures, inventory and accounts of Debtor is being paid through the payments set forth in paragraph 5.5 of the Plan. Within four months of the Effective Date Debtor will pay to Missouri State Bank the balance of said claim including principal, interest and costs of collection including attorney fees. In the event Debtor is unable to obtain financing to pay off said claim and the Class 3, 5, 7 and 9 claims in full within four months of the Effective Date, Debtor shall sell the business including all assets of the Debtor and the real estate on which Debtor operates its KFC franchise through a 363 sale within 30 days after the expiration of said four months. Impaired

      5.7     Class 7 real estate tax claim will be paid prior to the expiration of the last day to redeem the taxes from the refinancing of the Missouri State Bank loans (claims 5 and 6) or from the proceeds of the 363 sale. Impaired.

      5.8     Class 8 lease of the building from Carrie L. Shoppell will be assumed. The lease will be paid by making the payments to the mortgage holder Missouri State Bank pursuant to the terms of this plan and by curing the arrearages in the real estate taxes pursuant to the terms of this plan. The lease is a triple net lease and at the time the Debtor obtains new financing the payments shall be adjusted accordingly. Impaired. (As an insider, class 8 claimant's vote will not be considered for forcing a cram down.)

      5.9     Class 9 secured claim of the Internal Revenue Service will be paid in from the proceeds of the refinancing of the Missouri State Bank loans subsequent to the payments to the class 3, 5, 6 and 7 claims. In the event the Debtor is not able to refinance the Missouri State Bank loans within 4 months of the Effective Date, class 9 claims will be paid from the proceeds of the sale of the business subsequent to the class 3, 5, 6 and 7 claims. Impaired.

5.10    Class 10 lease of an ice machine with Surety Equipment will be assumed and paid according to its terms, with arrearages, if any, paid within 90 days of the Effective Date. Unimpaired.

5.11    Class 11 executory contract for the KFC franchise will be assumed and arrearages on payments for royalties/national and local advertising will be paid at $1,500.00 per month commencing the 15th of the month following the Effective Date for 8 payments and $2,000.00 per month thereafter until paid in full.  In the event that Debtor obtains financing and there are funds available in excess of the amount required to pay the class 2, 3, 5, 6, 7, and 9 claims subsequent funds will be applied to the balance of the class 11 claims to the extent funds are available.  Impaired.

5.12    Class 12 claims will be paid pro rata in 60 monthly payments with the first monthly payment due 15 days after the end of the first full calendar quarter following the Effective Date.  The amount paid to the class 12 claims shall be $1,000.00 per month for the first 18 months and $2,900.00 per month for the following 42 months, payments not to exceed the amount of the allowed class 12 claims.  In the event the business is sold prior to completion of plan payments the proceeds of the sale after payment of costs of sale, and class 1-11 claims will be paid to the extent necessary to pay the unpaid balance of the payments due class 12 claims. Impaired.

5.13    Class 13 claim of Cindy and John Grant is a disputed premises liability claim. Debtor has insurance coverage for the disputed claim and the claimants will be, upon the Effective Date, granted relief from the automatic stay to pursue the claim to the extent of the insurance coverage.  No funds will be paid by Debtor on this claim.  Impaired.

## ARTICLE VI

### Implementation

Following the Effective Date, the Debtor will continue to make payments to Missouri State Bank loans (as provided in Sections 5.5 and 5.6 of this Plan) while the Debtor obtains new financing to pay off the loans.  The Debtor shall have a written, non-contingent financing commitment for an amount sufficient to satisfy the claims of Missouri State Bank and pay off the Class 3, 7 and 9 claims by no later than three months after the Effective Date.  Debtor must show such financing commitment to Missouri State Bank and other interested parties.  Debtor must

close such refinancing by no later than four months after the Effective Date. The approximate amounts currently required are set forth below:

| | |
|---|---:|
| Missouri State Bank-<br>(as of 12/22/2005 per proof of claim)[1] | $725,592.19 |
| Guarantors-Flotow, Karst, Hohman | 27,279.19 |
| Madison County-Real estate taxes 2003 and 2004 | 34,848.32 |
| Madison County-Real estate taxes 2005 (estimated) | 15,000.00 |
| Internal Revenue Service-Secured claim | 12,778.34 |
| | **$815,498.14** |

The figures listed may increase prior to closing on financing as there will be an increase in the amount needed to redeem the 2003-2004 real estate taxes, some interest accrued on the IRS secured claim and additional collection costs on the Missouri State Bank loans, off set in part by the reduction of the Missouri State Bank loans by monthly payments. After the refinancing the Debtor shall continue to operate the business and pay the remaining claims as set forth in the plan. The plan provides for the curing of pre-petition defaults on the payments to KFC and payment over a period of 5 years to the unsecured creditors of 100% of their claims.

After the Effective Date, until the refinancing or sale has been completed, Debtor will continue to provide Missouri State Bank, and the attorney for guarantors, Flotow, Karst and Hohman with weekly income and expenses statements.

Debtor is currently managed by Alan Shoppell who draws a salary of $39,000.00 per year from the company. Mr. Shoppell has been looking for full time employment outside of the corporation which would eliminate his salary from the over head. He has been training the assistant manager to manage the business and would increase her salary. In the event Alan Shoppell obtains full tie employment he will promote the assistant manager to manager and terminate his salary. The net savings to the business would be well over $30,000.00 per year and Mr. Shoppell would continue to work at no salary to advise the manager and supervise the over all running of the business.

---

[1] Pursuant to the claims filed by the guarantors they have paid $27,279.19 to Missouri State Bank which were the costs of collection. This amount has been subtracted from the pay off to the bank.

**8**

Debtor consents to an agreed order granting Missouri State Bank relief from the automatic stay to allow it to proceed with its foreclosure proceeding pending in the Circuit Court of Madison County under file number 05-CH-660.  The agreed order shall provide that Missouri State Bank may proceed with its foreclosure against Debtor, including the entry of a judgment of foreclosure and setting a sale date, provided that unless Debtor defaults under the terms of the Plan as set forth in Section VII and fails to timely cure the default, no foreclosure sale shall be conducted prior to the end of the four month period for Debtor to close its refinancing and pay off the Class 3, 5, 6, 7 and 9 claims.  Following the end of such four month period or a default by Debtor under this Plan, Debtor and Carrie L. Shoppell will, if requested by Missouri State Bank, grant peaceful possession of the real and personal property owned or leased by Debtor to Missouri State Bank or its agents.

Subject to Missouri State Bank's right to conduct a foreclosure sale, if the Debtor has not closed a refinancing transaction within the above-referenced four month time period following the Effective Date, or prior to that time if the Debtor elects, the Debtor will seek to sell substantially all of its assets, including its KFC franchise (to the extent assignable under applicable law), as well as the underlying real property, in a sale under Section 363 of the Bankruptcy Code.  Carrie L. Shoppell, the owner of the real property, has agreed to cooperate in such a sale.

## ARTICLE VII
### Default

The following events would constitute a default under the terms of this Plan:

1. Failure of Debtor to timely make the weekly plan payments, in certified funds, to class 5 and 6 creditor Missouri State Bank;

2. Failure of Debtor to provide weekly income and expense statements to counsel for Missouri State Bank, counsel for the guarantors and counsel for the creditors committee;

3. Failure of Debtor to maintain insurance on building and equipment and standard business insurance;

4. Failure of Debtor to provide evidence of application for financing to counsel for Missouri State Bank, counsel for the guarantors and counsel for the creditors committee within 60 days of the Effective Date;

5. Failure of Debtor to provide to counsel for Missouri State Bank, counsel for the guarantors and counsel for the creditors committee within three months of the Effective Date, a loan commitment for financing sufficient to pay the class 3, 5, 6, 7 and 9 claims;

6. Failure of Debtor to timely pay its current royalty payments to KFC; and

7. Failure of Debtor to timely pay its current local and national advertising coop payments.

In the event that a default occurs as stated above Debtor shall upon written notice of the default (which may be given by e-mail to Alan Shoppell and Debtor's counsel) have eight days cure the default, except for a payment default to Missouri State Bank, which shall be cured within one day. In the event that the default is not cured in a timely manner, Missouri State Bank shall be free to schedule a foreclosure sale at any time, notwithstanding the provisions of Article VI.

## ARTICLE VIII

### Discharge

7.1     Upon final confirmation Carrie L. Shoppell, Inc. will be discharged and/or released of all those debts and claims dischargeable under the Code.

7.2     Pending final confirmation the stay imposed by Section 362 of the Code will remain effective.

## ARTICLE IX

### Retention of Jurisdiction

8.1     The court shall retain jurisdiction over these proceedings after Final Confirmation for the following purposes:

   8.1.1 To hear and determine objections to claims.

   8.1.2 To hear and determine causes of action by or against Debtor arising prior to the commencement of or during the pendency of these proceedings.

   8.1.3 To hear and determine any dispute arising under this Plan.

   8.1.4 To grant extensions of any deadline set herein.

   8.1.5 To enforce all discharge provisions under the Plan.

   8.1.6 Should this Chapter 11 case convert to a case under Chapter 7 following confirmation, but before substantial consummation of the Plan, all property of the Chapter 11 estate shall revest in the Chapter 7 estate.

   8.1.7 To hear and determine any motion made pursuant to Section 363 to sell substantially all of the Debtor's assets and the underlying real property as set forth in this Plan.

 8.2 In addition and at any time the Court may make such orders or give such direction as may be appropriate under Section 1142 of the Code.

 8.3 It is anticipated that Debtor shall incur additional attorney fees and accountant fees after confirmation of the Plan which may be paid by Carrie L. Shoppell, Inc. without the necessity for Court approval.

          **CARRIE L. SHOPPELL, INC.**

          BY: /s/ Alan Shoppell
            Alan Shoppell

/s/ Donald M. Samson
DONALD M. SAMSON
Attorney for Debtor
226 W. Main St., Suite 102
Belleville, IL  62220
618-235-2226