## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | IN CHAPTER 11 PROCEEDINGS |
| | ) | |
| CARRIE L. SHOPPELL, INC., | ) | BK 05-33609 |
| | ) | |
| Debtor. | ) | |

## SECOND AMENDED DISCLOSURE STATEMENT

### I.  Introductory Statement

Debtor, Carrie L. Shoppell, Inc., filed its Plan of Reorganization with the United States Bankruptcy Court for the Southern District of Illinois on _____, 2006.  This disclosure Statement is required by 11 USC §1125, and must be approved by the Bankruptcy court as containing adequate information to allow a holder of a claim against Debtor to make an informed decision on the acceptance or rejection of the Plan of Reorganization.

A creditor, in order to vote on the Plan of Reorganization, must have filed a proof of claim at or prior to the Bar Date as provided in the Plan of reorganization unless scheduled by the Debtor as not disputed, liquidated and not contingent.  Any creditor scheduled as not disputed, liquidated and not contingent is, to the extent scheduled, deemed to have filed a claim, and absent objection, such claim is deemed allowed.  A creditor or interest holder may vote to accept or reject the Plan of Reorganization by filling out and mailing to the Debtor's attorney the ballot which the Debtor has provided.

The Court has fixed _____, 2006, at 4:30 p.m., as the last date by which ballots must be filed with the Debtor.  No vote received by the Debtor after such time will be counted.  Whether a creditor or interest holder votes on the Plan of Reorganization or not, such person will be bound by the terms and treatment set forth in the Plan of Reorganization if the plan is accepted by the requisite majorities of classes of creditors and interest holders and/or is confirmed by the Court.  Absent some affirmative act constituting a vote, such creditor or interest holder will not be included in the tally.  Allowance of a claim or interest for voting purposes, and disallowance of any claim or interest for voting purposes does not necessarily mean that all or a portion of the claim or interest will be allowed or disallowed for distribution purposes.

In order the Plan or Reorganization to be accepted by creditors, a majority in number and a two-thirds majority in amount of claims filed and allowed (for voting purposes) and voting of each impaired class of creditors must vote to accept the plan. In order for the Plan of Reorganization to be accepted by interest holders, a two-thirds majority in amount of interests allowed (for voting purposes) and voting of each class of interests must vote to accept the plan. You are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which the Court furnished you. Please be sure to properly complete the form and legibly identify the name of the claimant or interest holder.

The Debtor or others may solicit your vote. The cost of any solicitation by the Debtor will be borne by the Debtor. No representative of the Debtor shall receive any additional compensation for any solicitation.

No representations concerning the Debtor or the Plan of Reorganization are authorized by the Debtor other than as set forth in this memorandum. Any representations or inducements made by any person to secure your vote which are other than herein contained should not be relied upon and such representations or inducements should be reported to counsel for the Debtor who shall deliver such information to the Bankruptcy Court.

## II. Nature and History of Business

Carrie L. Shoppell, Inc. was incorporated April 1, 1996 to operate a KFC franchise located at 48 West Edwardsville Road, Wood River, Illinois. After operating at that location for several years KFC required the corporation to relocate and build an updated store. Ground was purchased and a new facility built at 1800 Vaughn Road, Wood River, Illinois which opened in February 2002. The new restaurant was in an area that was planned for commercial development but was one of the first businesses in the area. The business struggled with the increased cost for the new building and the lack of other business in the area, resulting in sales not increasing sufficiently to cover the increased costs. From 2002 to 2005 the business struggled with management problems and health issues for Alan Shoppell who ran the day-to-day operations. In 2005 the loan with Missouri State Bank for the building and equipment came due and the bank declared the loan in default and chose not to renew the loan. The company attempted to refinance the loan through Eagle Bank but the loan was turned down due to an appraisal that did

not take into consideration the more than doubling of land values in the immediate area since the real estate was purchased.

In order to reorganize debtor has been able to get better control of its costs and inventory. During 2005 the company had an increase of approximately 3% in sales. The planned commercial development is starting to open with a Super Wal-Mart due to open in May 2006 and several other businesses due to open in 2006. Debtor anticipates sale increases of at least 5% over the next two years which should allow it to pay its creditors according to the plan being submitted. Debtor believes the projections to be realistic as sales from January 2006 exceeded sales for January 2005 by 5.12%.

The plan provides for the weekly payments on the two Missouri State Bank loans while the debtor obtains new financing to pay off the loans. The plan provides that within 4 months from confirmation debtor will close on new financing whether by conventional financing or a sale and lease back and provides further that in the event debtor is unable to close on refinancing within said 4 month period, debtor shall have an additional 30 days to sell the business pursuant to 11 USC 363 (f). The financing must be sufficient to pay the balance of the 2 loans to Missouri State Bank, advances made by the guarantors (Flotow, Karst and Hohman) (including all post petition advances), real estate taxes and the secured claim of the IRS. The amounts currently required are set forth below:

| | |
|---|---|
| Missouri State Bank-<br>(as of 12/22/2005 per proof of claim)[1]-Classes 5 & 6 | $725,592.19 |
| Guarantors-Flotow, Karst, Hohman-Class 3 | 27,279.19 |
| Madison County-Real estate taxes 2003 and 2004-Class 7 | 34,848.32 |
| Madison County-Real estate taxes 2005 (estimated) | 15,000.00 |
| Internal Revenue Service-Secured claim-Class 9 | <u>12,778.34</u> |
| | **$815,498.14** |

The figures listed may increase prior to closing on financing as there will be an increase in the amount needed to redeem the 2003-2004 real estate taxes, some interest accrued on the

---

[1] Pursuant to the claims filed by the guarantors they have paid $27,279.19 to Missouri State Bank which were the costs of collection. This amount has been subtracted from the pay-off to the bank.

IRS secured claim and additional collection costs on he Missouri State Bank loans, off set in part by the reduction of the Missouri State Bank loans by monthly payments.  After the refinancing the debtor shall continue to operate the business and pay the remaining claims as set forth in the plan.  The plan provides for the curing of post petition defaults on the payments to KFC and payment over a period of 5 years to the unsecured creditors of 100% of their claims.  A schedule of the unsecured claims is attached hereto as Exhibit A.

After confirmation, until the refinancing or sale has been completed, debtor will continue to provide Missouri State Bank, and the attorney for guarantors, Fletow, Karst and Hohman with weekly income and expenses statements.  The plan provides a method for debtor to be declared in default prior to the expiration of the 4 month period for obtaining new financing.

### III.  Operations for the Calendar Year Prior to Filing Chapter 11

During the year prior to filing Chapter 11 for reasons set forth in the prior section of this Disclosure Statement the company had a loss of $18,113.00.

**INCOME:**

| | |
|---|---|
| Gross Receipts or Sales: | $841,589.00 |
| Costs of Goods Sold: | (325,233.00) |
| Gross Profit: | 516,366.00 |

**DEDUCTIONS:**

| | |
|---|---|
| Labor: | (205,355.00) |
| Compensation of Officers: | (3,000.00) |
| Repairs and Maintenance: | (11,255.00) |
| Rents: | (72,819.00) |
| Taxes and Licenses: | (765.00) |
| Interest: | (7,216.00) |
| Depreciation: | (27,118.00) |
| Advertising: | (43,137.00) |
| Other Deductions: (See attached Exhibit B) | (163,814.00) |
| | |
| Total Deductions: | (534,479.00) |
| | |
| Net Income: | (18,113.00) |

## IV.  Operations for 2005

Carrie L. Shoppell, Inc. has continued operating its business throughout the proceedings. The following is a summary of the income and expenses of Carrie L. Shoppell, Inc. for January through November 2005 which includes the period during the Chapter 11:

| | | |
|---|---|---|
| Sales: | | $789,154.00 |
| Costs of Sales: | | (284,097.00) |
| Gross Profit: | | 505,057.00 |
| Expenses: | | |
| Payroll | 211,409.00 | |
| Utilities | 28,697.00 | |
| Insurance | 16,935.00 | |
| Rent | 42,535.00 | |
| Vehicle Expense | 7,862.00 | |
| Advertising | 27,370.00 | |
| Officer – Gross Wages | 18,700.00 | |
| Royalties | 20,118.00 | |
| Depreciation | 11,916.00 | |
| Other | 65,538.00 | |
| Total Expense: | | (451,080.00) |
| Net Profit: | | 54,249.00 |

## V.  Projected Income

The following are projections for 2006, 2007 and 2008.  The projections are based on a 5% increase in sales for 2006, 2007 and 6 ½% increase in 2008.  The increase is believed to be a conservative projection as the increase for 2005 was nearly 3% over 2004, despite the fact that Route 111, which is the main artery by the store was shut down periodically for several months for construction.  During 2006 a super Wal-Mart will open in March and numerous other developments will open in the immediate area of the store including the extension of Illinois 255.

### 2006-Projections

**Sales** (Net)**:**                                                                    $905,921.20

**Costs of Sale:**

| | |
|---|---:|
| Food | 291,706.63 |
| Paper | 33,519.08 |
| Team Labor/Managers | 225,574.38 |
| Officers | 29,985.99 |
| Royalties | 36,236.99 |
| Advertising | 48,013.82 |
| Insurance | 20,020.86 |
| Legal/Accounting | 6,250.86 |
| Office | 1,500.00 |
| Equipment Rent | 2,264.80 |
| Repairs | 9,059.21 |
| Smallwares | 1,721.25 |
| Telephones | 2,491.28 |
| Utilities (E, G, W, S) | 36,236.85 |
| Vehicle Expense | 6,000.00 |
| IRS-Priority | 14,994.00 |
| IDR | 5,400.00 |
| Dept. of Employment Security | 396.00 |
| Missouri State Bank | 105,048.75 |
| Unsecured | 6,000.00 |
| Real Estate Tax | 15,000.00 |
| KFC-Cure Payments | <u>13,500.00</u> |

**Total Expenses:**                                                          <u>(910,920.75)</u>

**Projected Profit:**                                                          ($4,999.55)

### 2007-Projection

**Sales** (Net)**:**                                                                    $951,215.76

**Costs of Sale:**

| | |
|---|---:|
| Food | 306,291.47 |
| Paper | 35,194.98 |
| Team Labor/Managers | 236,852.72 |
| Officers | 38,048.63 |

| | |
|---|---|
| Royalties | 38,048.63 |
| Advertising | 50,414.44 |
| Insurance | 21,021.87 |
| Legal/Accounting | 5,231.69 |
| Office | 1,521.95 |
| Equipment Rent | 2,378.04 |
| Repairs | 9,512.16 |
| Smallwares | 1,807.31 |
| Telephones | 2,615.84 |
| Utilities (E,G,W,S) | 38,048.63 |
| Vehicle Expense | 6,182.90 |
| IRS-Priority | 19,992.00 |
| IDR | 7,200.00 |
| Dept. of Employment Security | 528.00 |
| New Financing | 82,800.00[1] |
| Unsecured | 12,000.00 |
| Real Estate Tax | 15,000.00 |
| KFC-Cure Payments | 15,000.00 |

**Total Expenses:** (945,691.26)

**Projected Profit:** $5,524.50

## 2008-Projection

**Sales** (Net): $1,034,828.00

**Costs of Sale:**

| | |
|---|---|
| Food | 341,493.00 |
| Paper | 38,609.00 |
| Team Labor | 273,780.00 |
| Royalties | 41,393.00 |
| Advertising | 54,328.00 |
| Insurance | 23,741.00 |
| Legal/Accounting | 5,500.00 |
| Office | 1,250.00 |
| New Financing | 82,800.00 |
| Equipment Rental | 1,440.00 |
| Repairs | 14,500.00 |
| Smallwares | 1,500.00 |
| Telephones | 3,500.00 |
| Utilities (E, G, W, S) | 46,500.00 |

---

[1] Payment is based on refinancing $825,000.00 over 20 years at 8%.

| | | |
|---|---:|---|
| Vehicle Expense | 6,100.00 | |
| IRS-Priority | 19,992.00 | |
| IDR | 7,200.00 | |
| Dept. of Employment Security | 528.00 | |
| Real Estate Taxes | 16,000.00 | |
| Unsecured | <u>34,800.00</u> | |

**Total Expenses:**                                                    <u>(1,014,954.00)</u>

**Projected Profit:**                                                    $19,874.00

### VI.  Liquidation Analysis

The primary asset, the building and real estate for the KFC franchise is not owned by the corporation but is owned by Carrie L. Shoppell individually and leased to the corporation.  The corporation, however, is the maker of the mortgage loan on the real estate.  The real estate and equipment (which is also mortgaged to Missouri State Bank) was appraised at $900,000.00 in June 2005 when debtor was attempting to refinance its loan through Eagle Bank.  Alan Shoppell believes this appraisal is low as it used the same land value as what was paid for the parcel in 2001 and did not take into account the more than doubling of land values in the immediate area since 2001.  Alan Shoppell believes a better value for the real estate alone would be $1,050.00.  A sale of the real estate should pay off Missouri State Bank.  The remaining assets consisting of equipment, fixtures, furnishings, a 1997 Ford F150 and accounts are valued on debtor's schedules at approximately $65,000.00.  The priority claims and secured claim of the Internal Revenue Service total $150,329.89 so upon a liquidation of the assets in a Chapter 7 would realize no return to the unsecured creditors.

### VI.  Alternatives to the Plan

Although the disclosure statement is intended to provide information to assist in the formation of a judgment as to whether to vote for or against the plan and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the plan, a brief discussion of alternatives to the plan may be useful.  These alternatives include transfer to liquidation bankruptcy or dismissal of the proceedings.  The Debtor believes the proposed plan to be in the best interests of creditors and the Debtor because it provides an

orderly method for payments to creditors which provide creditors a greater return than a liquidation of Debtor's assets.

### VII.  Disclosures Required by the Bankruptcy Code

The Bankruptcy Code requires disclosure of certain facts:

1.  There are no payments made or promises of the kind specified in §1129(a)(4)(A) of the Bankruptcy Code which will not be subject to approval by the court.

2.  Management and ownership of Debtor will remain the same after confirmation of the plan as before.  Debtor believes that continued control is in the best interests of all creditors and interest holders as described in §1129(a)(5) of the Bankruptcy Code.

3.  Counsel to the Debtor has advised it that it is possible that it may require legal services in connection with these proceedings which might require payment of attorney fees for services performed after confirmation and that court approval of these payments would not be required.

### VIII.  Conclusion

The materials provided in this Disclosure Statement are intended to assist you in voting on the Plan of Reorganization in an informed fashion.  Since, if the plan is confirmed, you will be bound by its terms, you are urged to review this material and make such further inquiries as you may deem appropriate and then cast an informed vote on the plan.

**CARRIE L. SHOPPELL, INC.**

BY: /s/ Alan Shoppell_____
       Alan Shoppell

/s/ Donald M. Samson_____
DONALD M. SAMSON
Attorney for Debtor
226 W. Main St., Suite 102
Belleville, IL  62220
618-235-2226